**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RAMONA CAL** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SECURITAS SECURITY** | ) | |
| **SERVICES, USA, INC.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | |

**COMPLAINT**

Plaintiff, Ramona Cal, through her attorneys, complains of Defendant Securitas Security

Services, USA, Inc., as follows:

**NATURE OF ACTION**

1.   This is an action brought by Plaintiff, Ramona Cal, under the Americans with

Disabilities Act of 1990, 42 U.S.C § 12101 et seq., as amended, to redress unlawful disability-

based employment practices by Securitas Security Services, USA, Inc., and to make her whole.

**JURISDICTION AND VENUE**

2.   Jurisdiction is based upon 28 U.S.C. §1331, 28 U.S.C. §1343, and the Americans

with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., as amended.

3.   Plaintiff has complied with all administrative prerequisites by filing a timely

Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"),

attached hereto as Exhibit A.

4.   The EEOC has issued to Plaintiff a Notice of Right to Sue, which notice is

attached hereto as Exhibit B.

5.   This action properly lies in this district pursuant to 28 U.S.C. §1391 because the events giving rise to this claim occurred in this judicial district.

## PARTIES

6.   Plaintiff Ramona Cal (hereinafter "Plaintiff"), is a female citizen and resident of Cook County, Illinois, who was employed by Defendant.

7.   Defendant Securitas Security Services, USA, Inc. (hereinafter "Defendant"), is a corporation organized and existing under the laws of the State of Delaware, is authorized to conduct business in Illinois, and maintains an office in Chicago, Cook County, Illinois.

8.   At all times relevant hereto, Defendant employed more than fifteen (15) employees, was engaged in an industry affecting commerce, and was a covered employer under the Americans with Disabilities Act.

## FACTUAL ALLEGATIONS

9.   Plaintiff began her employment with Defendant on or around December 16, 1998, as a Security Officer.  She was assigned to provide security services at the Ford Mixing Center ("Ford site") at 132nd Street in Chicago.

10. Plaintiff's duties, *inter alia*, were to check trucks in and out of the yard, marking truck and unit numbers, roving the yard on a truck, letting customers and trucks in and/or out of the yard, fielding phone calls, and completing paperwork.

11. Throughout her employment, Plaintiff performed her duties at or above her employer's legitimate expectations.

12. At all times relevant hereto, Plaintiff suffered from disabilities, including Poliomyelitis ("Polio") and Arthritis, which conditions are permanent and which conditions substantially limited one or more of Plaintiff's major life activities.

13. Plaintiff was diagnosed with Polio as a child in or around the late 1950s. Polio is a virus that impaired the growth of her right leg for which she suffers arthritis of the hip and limps when ambulating.

14. At all times relevant hereto, Plaintiff could perform the essential functions of her job, with or without a reasonable accommodation.

15. Defendant was aware of Plaintiff's disabling conditions, was aware of Plaintiff's record of disabilities, and in fact, regarded Plaintiff as disabled.

16. On or around early to mid July 2009, Plaintiff learned that Defendant's contract to provide security services at the Ford Mixing Center was set to expire in mid to late August 2009.

17. Plaintiff was told by a scheduler that Defendant would place her at a new position/location upon expiration of the site contract.

18. Plaintiff worked with about eleven other security guards at the Ford Mixing Center. In the weeks leading up to the expiration of the site contract, several of Plaintiff's non-disabled co-workers, with less seniority, were provided placement at other locations.

19. Prior to the expiration of the contract, in or around August 2009, Plaintiff was in contact with her scheduler and inquired about new positions and her placement after the contract ended in August.

20. The scheduler claimed she did not have a placement for Plaintiff and told Plaintiff she would have to call individual site managers on her own to find out about open positions.

21. On or around August 25, 2009, Plaintiff contacted Jerry Team, one of the managers in charge of Securitas placements at CSX sites, regarding a "roving" position watching the train tracks, which would be similar to the job she performed at the Ford site for 11 years.

22. Mr. Team briefly interviewed Plaintiff regarding her years of employment at

Securitas, job duties at the Ford site, and the amount of absences she had. Mr. Team stated "you sound like the perfect person."

23. When Plaintiff asked about open positions, Mr. Team said he had a position that required her to jump on train cars and check seals. This position was substantially different from the roving position for which she had inquired.

24. Plaintiff informed Mr. Team of her handicap and Mr. Team then responded that he could not use her and suggested she call Ricardo Herrera, Securitas manager in charge of placements at Chicago Housing Authority ("CHA") sites.

25. On information and belief, there were multiple positions open at CSX sites that Plaintiff could have performed with or without a reasonable accommodation.

26. On information and belief, the day after Plaintiff's conversation with Jerry Team a non-disabled former co-worker of Plaintiff's was hired into a position that involved logging trucks in and out of the train yard at CSX, a position that Plaintiff was qualified to perform.

27. Plaintiff then called another manager, Ricardo Herrera, regarding open Securitas positions at CHA locations.

28. Plaintiff asked whether Mr. Herrera had a morning shift position open and what the jobs at his site consisted of. He told Plaintiff he had an afternoon shift from 3:00 p.m. to 11:00 p.m. and it consisted of "a lot of walking."

29. Plaintiff informed Mr. Herrera that she had a handicap and she could not do a lot of walking. He asked her if the company knew she had a handicap when they hired her and also asked her how long she had been with Securitas. Plaintiff responded that she had been with the company for over eleven (11) years and the company knew of her handicap when she was hired. Mr. Herrera then told Plaintiff that he could not use her.

30. Plaintiff then filed a grievance with her union regarding Securitas' failure to place her in a new position upon expiration of the Ford Mixing Center contract. Plaintiff also called Cameron Walker, Securitas Area Human Resources Manager, and Al Rickets, Securitas Vice-President, leaving messages for each regarding her failure to be placed by Securitas.

31. On or about August 27, 2009, Plaintiff called her scheduler asking if she had a job placement for Plaintiff because the contract had ended at the Ford site. The scheduler told Plaintiff she should go to Securitas offices the following day to see another manager, Leonardo Jimenez.

32. The scheduler also told Plaintiff that the CHA job was a desk job and Mr. Herrera had lied to her about the physical requirements for that position.

33. On or around August 28, 2009, Plaintiff met with Leonardo Jimenez, a branch manager at Securitas. Plaintiff told Mr. Jimenez about her unsuccessful attempts to find a new placement and her continued efforts to find an open position.

34. Mr. Jimenez inquired specifically about her contact with Mr. Herrera. Plaintiff told him that Mr. Herrera said he could not use her because she told him she had a handicap. Mr. Jimenez then asked if the company knew of her handicap when they hired her as well. Plaintiff stated that her handicap was the reason for placing her at the Ford site, close to her home.

35. Mr. Jimenez then assigned her to a security position at Northwestern Memorial Hospital ("Northwestern Memorial") on the north side of Chicago, which required her to commute extensively by foot to get to the work location; this position was on a flex schedule, and Plaintiff was told it was forty hours each week.

36. Plaintiff reported to the new position the following Monday. Because Plaintiff relied on public transportation in order to get to Northwestern Memorial, she had to walk several

blocks to a bus, then take a train, and then walk several more blocks to get to Northwestern Memorial.

37. On August 31, 2009, as a result of commuting to and working at Northwestern Memorial, Plaintiff's leg began to swell and became numb. Plaintiff tried to work another shift the following day, but was having difficulty because of the condition of her leg. She raised her concerns to the site captain who then informed Mr. Jimenez.

38. The next day, on September 2, 2009, Plaintiff met again with Mr. Jimenez at Securitas offices. He met with her under the guise of helping her find a transfer placement. However, while Mr. Jimenez made calls on her behalf, he did not let her interview for positions for which she may have been qualified because of his own bias about her disability, saying to several managers "she can't do that," without even asking her.

39. Further, Mr. Jimenez did not inquire as to the specific requirements of many of the open positions and refused to allow Plaintiff to inquire about the requirements.

40. When Plaintiff asked Mr. Jimenez why he did not ask for specifics, he responded, "you are the one with the handicap and can't do anything." Plaintiff objected and told Mr. Jimenez that it was wrong she was being treated this way.

41. Plaintiff then complained to Ms. Marcia Wilson, Human Resources, regarding Mr. Jimenez's comments and told her what had occurred with Mr. Team and Mr. Herrera as well.

42. Plaintiff told Ms. Wilson that she was being mistreated and was refused work after informing the managers that she was handicapped. She requested that she be allowed to interview for other positions, however, Ms. Wilson refused to allow her to do so because "you disclosed you have a handicap."

43. Before Plaintiff left Defendant's offices, Mr. Cameron Walker, Securitas Area Human Resources Manager, gave Plaintiff a letter stating she had indicated to Defendant that she "had a medical condition" and requested that she have a fitness for duty evaluation completed by her physician. The letter requested that this information be provided within ten (10) days or Securitas will "assume that you are no longer interested in employment with us." A job description for Security Officer was also provided.

44. The following day, September 3, 2009, Plaintiff met with her physician, Dr. Claudia Fegan, and provided her with the job description. Dr. Fegan reviewed the job description and cleared her to work with accommodations.

45. On or around September 8, 2009, six days after receiving the fitness for duty request by Securitas, Plaintiff provided her doctor's evaluation to Defendant.

46. Despite having complied with all of Securitas' requests, Defendant has failed and refused to assign Plaintiff to positions for which she may be qualified.

47. Further, on information and belief, several non-disabled employees with less seniority than Plaintiff who worked at the Ford site, were placed by Defendant at other sites on the south side of Chicago.

48. Notwithstanding Plaintiff's ability to perform the essential functions of the security officer position with or without reasonable accommodation and Plaintiff's requests for accommodation, Defendant has at all time refused to offer Plaintiff new placement, provide Plaintiff with a reasonable accommodation, or engage in the interactive process.

49. Defendant's discriminatory treatment of Plaintiff is in direct violation of the Americans with Disabilities Act. As a result of Defendant's discriminatory behavior, Plaintiff has suffered lost wages, benefits, emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

### COUNT I
### DISCRIMINATION IN VIOLATION OF
### THE AMERICANS WITH DISABILITIES ACT

50. Plaintiff realleges paragraphs 1 through 49 and incorporates them as if fully set forth herein.

51. Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 et seq., makes it unlawful for an employer to discriminate against an employee on the basis of an employee's disability, because the employer regards the employee as suffering from a disability and/or because of the employee's record of a disability.

52. By its conduct as alleged herein, Defendant discriminated against Plaintiff on the basis of her disability, because Defendant regarded Plaintiff as disabled and/or because Defendant was aware of Plaintiff's record of having a disability.

53. Defendant's conduct toward Plaintiff illustrates a willful and/or reckless disregard of Plaintiff's right to be free from impermissible disability discrimination.

54. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on Count I and that it:

    a) Declare that Defendant's conduct was in violation of The Americans with Disabilities Act, as amended;
    b) Order Defendant to reinstate Plaintiff to a position equal to or greater than her former position; or in the alternative, award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

c) Award Plaintiff the value of all actual damages and economic losses she has suffered;

d) Award Plaintiff damages for emotional distress and compensatory damages;

e) Award Plaintiff punitive damages;

f) Award Plaintiff reasonable attorney's fees, costs and disbursements;

g) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

h) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

i) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT II
## FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

55. Plaintiff realleges paragraphs 1 through 49 and incorporates them as if fully set forth herein.

56. Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 et seq., makes it unlawful for an employer to fail to accommodate an employee's disability.

57. By its conduct as alleged herein, Defendant failed to accommodate Plaintiff's disability.

58. Defendant's conduct toward Plaintiff illustrates a willful and/or reckless disregard of Plaintiff's rights to be free from impermissible disability discrimination.

59. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant on Count II and that it:

a) Declare that Defendant's conduct was in violation of The Americans with Disabilities Act, as amended;

b) Order Defendant to reinstate Plaintiff to a position equal to or greater than her

former position; or in the alternative, award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

c) Award Plaintiff the value of all actual damages and economic losses she has suffered;

d) Award Plaintiff damages for emotional distress and compensatory damages;

e) Award Plaintiff punitive damages;

f) Award Plaintiff reasonable attorney's fees, costs and disbursements;

g) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice;

h) Enjoin Defendant and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

i) Award Plaintiff any and all other relief as the Court deems just in the premises.

Respectfully Submitted,
RAMONA CAL

By:     /s/ Dara E. Friedman
        Attorney for Plaintiff

John P. Madden
Dara E. Friedman
O'Malley & Madden, P.C.
542 S. Dearborn Street
Suite 660
Chicago, Illinois 60605
312-697-1382
jmadden@ompclaw.com
dfriedman@ompclaw.com

Warren P. Prescott
Law Offices of Warren Prescott
181 S. Bloomingdale Road
Bloomingdale, Illinois 60108
630-924-8052
prescott@lawyer.com